UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

NORTHWELL HEALTH, INC.,

                                    Plaintiff,

       -against-

BLUE CROSS AND BLUE SHIELD OF SOUTH
CAROLINA,

                                    Defendant.
-----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION and
MEMORANDUM AND
ORDER**
23-cv-00603 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

       Presently before the Court in this diversity-breach of contract action are:  (i)
Defendant Blue Cross and Blue Shield of South Carolina's ("Blue Cross SC" or
"Defendant") motion to dismiss Plaintiff Northwell Health, Inc.'s ("Plaintiff" or
"Northwell") Amended Complaint ("Amended Complaint" or "Am. Compl."), Docket
Entry ("DE") [11], for failure to state a claim pursuant to Federal Rule of Civil
Procedure ("Fed. R. Civ. P.") 12(b)(6), on referral from the Honorable Joanna Seybert
for Report and Recommendation; and (ii) the parties' motion to seal certain
documents related to Defendant's motion to dismiss.  *See* Notice of Motion to Dismiss
("Defendant's Motion" or "Def. Mot."), DE [19]; Defendant's Memorandum of Law in
Support of Its Motion to Dismiss ("Def. Mem."), DE [20]; Motion to Seal, DE [26] (or
"Mot. to Seal").  By way of its Complaint dated February 27, 2023, DE [6], later
modified by the Amended Complaint dated May 18, 2023, Northwell commenced this
action alleging (i) breach of contract, (ii) breach of third-party beneficiary contract,
and (iii) liability under quasi-contract theories of unjust enrichment and *quantum*

*meruit*. *See* Am. Compl.  Defendant filed its motion to dismiss on December 5, 2023. *See* Def. Mot.  Plaintiff opposes.  *See* DE [22] ("Plaintiff's Opposition" or "Pl. Opp.").

The parties also jointly move to seal unredacted versions of:  (i) Defendant's Memorandum; (ii) the Declaration of Samuel Kadosh in Support of Defendant's Motion ("Kadosh Decl."), DE [21]; (iii) Plaintiff's Opposition; (iv) the Declaration of Meredith McBride in Opposition to Defendant's Motion ("McBride Decl."), DE [23]; (v) Defendant's Reply in Support of Defendant's Memorandum ("Def. Reply"), DE [24]; and (vi) the Reply Declaration of Samuel Kadosh in Support of Defendant's Motion ("Kadosh Reply Decl."), DE [25].  *See* Mot. to Seal.

For the reasons set forth herein, the Court grants the parties' Motion to Seal, and respectfully recommends granting Defendant's Motion as to Plaintiff's quasi-contract claims, and denying it as to Northwell's breach of contract and third-party beneficiary contract causes of action.

## I.    BACKGROUND

### A. Relevant Facts

The facts herein are taken from the Amended Complaint and are accepted as true for purposes of this Report and Recommendation and Memorandum and Order.

#### i.    *The Parties and Other Relevant Entities*

Northwell is a New York not-for-profit corporation that operates hospitals and health care facilities.  Am. Compl., ¶ 1.  Defendant is an insurance company incorporated in South Carolina with its principal place of business located in Columbia, South Carolina.  *Id.*, ¶ 2.  Blue Cross SC "issues and/or administers healthcare insurance plans" that cover healthcare services to insured patients,

paying or reimbursing all or part of healthcare providers' services to those insured. *Id.* Between January 1, 2019 and December 31, 2022 (the "Relevant Period"), Northwell provided medically necessary services, supplies and equipment to certain identified patients who were insured by Defendant (the "Patients"). *See id.*, ¶¶ 5-6.

The Blue Cross and Blue Shield Association ("BCBSA") is a national association of thirty-four independent and locally operated Blue Cross Blue Shield companies ("Member Companies"), including Blue Cross SC and Empire Blue Cross and Blue Shield ("Empire"), which operates exclusively in the New York counties where Northwell's health care facilities are located. *Id.*, ¶¶ 9, 10. BCBSA grants licenses to the Member Companies to use the Blue Cross Blue Shield trademarks, names and logos in specified exclusive geographical areas in the United States. *Id.*

### ii. *The BlueCard Program*

BCBSA created the national BlueCard Program to ensure that insured members of a Member Company in one state receive coverage for the healthcare services of an in-network provider of another Member Company located in another state. *Id.*, ¶¶ 14, 24. Defendant issued an insurance card to each Patient and instructed him or her to present that card to healthcare providers, including Plaintiff, knowing that participating providers "would be assured that payment for such health care would be made by Defendant." *Id.*, ¶ 7. These insurance cards identified the Defendant as the insurer and the insurance plan covering the Patient as part of the BlueCard Program. *Id.*, ¶ 8. The BlueCard Program "links participating healthcare providers and the [Member Companies] across the country in a single electronic

network for claims processing and reimbursement." *Id.*, ¶ 14. Further, the BlueCard Program links Defendant and Empire, and all other Member Companies, to participating health care providers in BCBSA's national network *via* the in-network participating provider agreements that those providers enter with the local Member Company. *Id.*, ¶ 16.

When a Patient seeking treatment provides Northwell with his or her insurance card, Plaintiff determines if Empire issued that card, or if it was issued by another Member Company. *Id.*, ¶ 26. According to Plaintiff, it understood and reasonably believed that a Member Company, including Defendant, "intended to assure Northwell that [Plaintiff] would receive payment for the health care provided to the Patient." *Id.*, ¶ 27.

### iii.   *Relevant Agreements*

#### a)  <u>The Member License Agreement and the Controlled Affiliate Licensee Agreement</u>

Each Member Company must execute a form Member License Agreement with BCBSA, and a Controlled Affiliate Licensee Agreement in which each Controlled Affiliate, which term is not defined, of a Member Company agrees that it is "'bound by the standards regarding quality control . . . as they may be amended by BCBSA from time to time.'" *Id.*, ¶ 11. According to Northwell, together, the Member License Agreement and the Controlled Affiliate Licensee Agreement set forth the standards that BCBSA requires Member Companies, and their controlled affiliates, follow to retain their licenses and continue to use the Blue Cross and Blue Shield trademarks, names and logos. *Id.*, ¶ 12. Plaintiff alleges that BCBSA requires each Member

4

Company, including Empire and Defendant, to "effectively and efficiently participate in each national program as from time to time may be adopted by the" Member Companies, including the "BlueCard Program." *Id.*, ¶ 13.

Plaintiff alleges that, pursuant to their respective "Licensee Agreements," which are not defined, but which the Court assumes refer to the Member License Agreement and the Controlled Affiliate Licensee Agreement, and which abbreviation the Court uses herein, both Empire and Defendant were required to participate in the BlueCard program and to abide by BCBSA-imposed standards. *Id.*, ¶ 41. These standards included that they each: (i) contractually require their in-network providers to treat patients insured under any other Member Company's BlueCard plan; and (ii) provide the financial resources needed to pay for the healthcare that any patient they insured received from a provider who was in-network with another Member Company. *Id.* Northwell was not a signatory to these Licensee Agreements. *Id.*, ¶ 42.

### b) <u>The Provider Agreement</u>

On or about January 1, 2000, Northwell entered into (i) a Participating Hospital HMO Agreement with Empire and Empire HMO, which latter entity is not described, and their affiliates, and (ii) a Participating Hospital PPO/Indemnity Agreement with Empire and Empire Assurance, which latter entity is not described, and their affiliates. *Id*, ¶ 18. Although Plaintiff does not name it in the Amended Complaint, a third agreement is quoted within: a Participating Practitioner Group Agreement dated January 1, 2008. *Compare* Kadosh Decl., Ex. B, at 1.A(5) *with* Am.

Compl., ¶ 22.   Throughout the Amended Complaint, Northwell refers to these agreements collectively as the "Provider Agreement."  *See* Am. Compl.  Defendant was not a signatory to the Provider Agreement.  *See id.*, ¶ 42.

The Provider Agreement establishes that Northwell is an in-network provider for plans managed or issued by Empire and its affiliates.  *Id.*, ¶ 19.  It also sets forth the medically necessary care Northwell must provide to Patients, and the rate Northwell is to be paid for that care.  *Id.*, ¶¶ 19, 46.  As to those insured by other BlueCard Plans, the Provider Agreement requires Northwell to provide healthcare services to patients who are "subscribers of other Blue Cross and/or Blue Shield Plans or their affiliates or subsidiaries" at the "the rates described in the Provider Agreement."  *Id.*, ¶ 21.  The Provider Agreement also limits the grounds on which Blue Cross SC may deny Northwell's claim for healthcare provided to a Patient.  *Id.*, ¶ 49.

The Provider Agreement further states that any "Payer" is entitled to access to services of Northwell providers who participate in the Empire Network.  *Id.*  Plaintiff alleges two definitions of "Payer" in the Provider Agreement: (i) "any plans affiliated with [BCBSA] or their subsidiaries of affiliates"[;] and (ii) "the following parties who are legally responsible for payment of Covered Services under the terms of the applicable benefit plan: [including] . . . Blue Card [*sic*] Plans with respect to any such Blue Card Plans' fully insured business[.]"  *Id.*, ¶¶ 21-22.  Under these definitions, according to Northwell, Defendant is a "Payer" obligated to pay Plaintiff

for services rendered to Patients under the Provider Agreement. *Id.*, ¶ 33, *see id.*, ¶ 46.

In addition, the Provider Agreement states that because Blue Cross SC is a Payer, its access to Northwell providers is subject to all provisions of the Provider Agreement, including the obligation of the non-Empire BlueCard Plan—here, Blue Cross SC—to pay for such services. *Id.*, ¶ 33. Plaintiff asserts that Defendant is "bound to comply" with provisions in the Provider Agreement dictating how it processes Northwell claims and when it must pay Plaintiff. *Id.*, ¶¶ 46, 49.

Plaintiff contends that contractual privity was formed between Northwell and Blue Cross SC when Northwell provided healthcare services to a Patient insured by one of Defendant's out-of-state BlueCard plans, because the BlueCard Program created "links" between and among all Member Companies and each participating provider of a Member Company. *Id.* Northwell asserts that Defendant "acted in accordance with this concept" of contractual privity when it determined Plaintiff's claims, and thus accepted the benefit of the in-network rates to which Northwell agreed in the Provider Agreement. *Id.*, ¶ 43. According to Plaintiff, Northwell provided contractual consideration to Blue Cross SC *via* Plaintiff's promises in the Provider Agreement, while Defendant provided Northwell consideration in turn *via* the "Licensee Agreements" between BCBSA and Blue Cross SC. *Id.*, ¶ 45.

### iv.  The Claims Process

When a Patient receives care at Northwell, Plaintiff sends Empire statements of its billed charges. *Id.*, ¶ 28. Empire then presents those charges to the Member

Company that insures that Patient—here, Blue Cross SC. *Id.*, ¶¶ 24, 29.  Defendant then determines whether the treatment Patient received is covered.  In doing so, Blue Cross SC is required to abide by the Provider Agreement. *Id.*, ¶¶ 30-31, 49.

After making this determination, Defendant either pays, or causes Empire to pay, the amount due, if any, to Northwell. *Id.*, ¶ 31.  Northwell further contends that, when its payment comes from Empire, Empire pays Plaintiff the amount that Defendant instructs it to pay, and transmits that payment as an agent of Blue Cross SC, using funds previously paid to Empire by Defendant. *Id.*, ¶ 34.  The Court notes that the Amended Complaint is not clear as to how Northwell receives payment from Empire and/or Blue Cross SC.

Plaintiff alleges that Blue Cross SC failed to adhere to one or more terms in the Provider Agreement, improperly determining that no payment or only partial payment was due to Northwell for the healthcare services Plaintiff provided to Patients. *Id.*, ¶ 50.  When Northwell appealed Blue Cross SC's claim determinations, Defendant did not resolve some of those appeals within the time period set forth in the Provider Agreement, or denied the appeals without cause. *Id.*, ¶ 37.  Plaintiff asserts that Blue Cross SC owes Northwell $176,208.93, plus interest, for unpaid claims. *Id.*, ¶ 38.

### B. Procedural History

By way of its Complaint dated February 27, 2023, later modified by the Amended Complaint dated May 18, 2023, Northwell commenced this action alleging (i) breach of contract, (ii) breach of third-party beneficiary contract, and (iii) liability

under quasi-contract theories of unjust enrichment and *quantum meruit*. *See* Am. Compl. Defendant filed its motion to dismiss on December 5, 2023. *See* Def. Mot. Plaintiff opposes. *See* Pl. Opp. The parties also jointly move to seal their unredacted briefing on Defendant's Motion. *See* Motion to Seal. On March 8, 2024, Blue Cross SC filed a notice of supplemental authority in support of Defendant's Motion, *see* DE [35], and on April 2, 2024, Northwell filed a notice of supplemental authority in support of its Opposition. *See* DE [37].

## II.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. But a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-

moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)).   Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted).   Further, the court may only consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated ... by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted).  A complaint incorporates a document by reference when it "makes a clear, definite, and substantial reference to the document." *Serrata v. Givens*, No. 1:18-CV-2016 (ARR), 2019 WL 1597297, at *3 (E.D.N.Y. Apr. 15, 2019) (internal citation omitted).  Where a complaint quotes heavily from a document, courts in this Circuit consider that document incorporated by reference.  *See, e.g., My Mavens, LLC v. Grubhub, Inc.*, No. 20-CV-4657, 2023 WL 5237519, at *3 (S.D.N.Y. Aug. 14, 2023); *Tavenner v. Int'l Bus. Machines Corp.*, No. 21-CV-6345, 2022 WL 4449215, at *2 (S.D.N.Y. Sept. 23, 2022), *aff'd*, No. 22-2318, 2023 WL 4984758 (2d Cir. Aug. 4, 2023).

## III.   DISCUSSION

### A. Defendant's Motion to Dismiss

Because the parties rely on New York breach of contract and quasi-contract law, *see* Pl. Opp. at 19; Def. Mem. at 11, "they have impliedly consented to the

application of New York law to this motion." *Meisel v. Grunberg*, 651 F. Supp. 2d 98,

109 (S.D.N.Y. 2009).

i.   *The Parties' Exhibits to their Briefing*

Initially, while Northwell attached no documents to the Amended Complaint,

the parties each attach contracts to their briefing on Defendant's Motion.  Defendant

submits: (i) a copy of the Participating Hospital PPO Agreement between Empire,

Empire HealthChoice Assurance Inc. ("EHCA"), their affiliates, and Plaintiff[1] dated

January 1, 2000 (the "2000 Hospital PPO Agreement"), *see* Kadosh Decl., Ex. A; (ii) a

copy of the Participating Practitioner Group Agreement between those same parties

dated January 1, 2008 (the "2008 Participating Practitioner Group Agreement"), *see*

Kadosh Decl., Ex. B; (iii) a copy of the Participating Hospital HMO Agreement

between those same parties dated January 1, 2000 (the "2000 Hospital HMO

Agreement"), *see* Kadosh Decl., Ex. C; and (iv) an amendment to those three

agreements dated January 1, 2014 (the "2014 Amendment"), *see* Kadosh Reply Decl.,

Ex. A.  Northwell includes an amendment to the 2000 Participating Hospital HMO

and PPO Agreements between those same parties dated January 1, 2008 (the "2008

Amendment").  *See* McBride Decl., Ex. A, DE [42].  Plaintiff does not oppose the

incorporation of these agreements into the Amended Complaint.  *See* Pl. Opp.

The Court recommends holding that Northwell has incorporated by reference

into the Amended Complaint: (i) the 2000 Hospital PPO Agreement, Kadosh Decl.,

---

[1] Northwell is not listed as a signatory to any contract attached to the parties' briefing.  Instead, the agreements are signed by an Empire entity and the "North Shore-Long Island Jewish Health System, Inc.".  The parties agree that this entity is Northwell.  *See* Kadosh Decl., ¶¶ 3-5; Pl. Opp. at 5.

Ex. A; (ii) the 2008 Participating Practitioner Group Agreement, Kadosh Decl., Ex. B; (iii) the 2000 Hospital HMO Agreement, Kadosh Decl., Ex. C; (iv) the 2008 Amendment, McBride Decl., Ex. A, DE [42]; and (iv) the 2014 Amendment, Kadosh Reply Decl., Ex. A.  The Amended Complaint "makes a clear, definite, and substantial reference" to the 2000 Hospital PPO Agreement and the 2000 Hospital HMO Agreement.  *Serrata v. Givens*, 2019 WL 1597297, at *3; *see* Am. Compl., ¶¶ 18-23. Plaintiff also clearly references the 2008 and 2014 Amendments.  *See* Am. Compl., ¶ 18.  Moreover, Northwell extensively quotes the 2000 Hospital PPO Agreement, the 2000 Hospital HMO Agreement, the 2008 Participating Practitioner Group Agreement, and the 2008 Amendment, which favors their incorporation into the Amended Complaint.  *See My Mavens, LLC v. Grubhub, Inc.*, 2023 WL 5237519, at *3; Am. Compl., ¶¶ 21-22; Pl. Opp. at 5 ("The [Amended Complaint] quotes from the BlueCard terms restated in the 2008 Amendment.").  Accordingly, the Court recommends concluding that Northwell has incorporated by reference these five documents into the Amended Complaint.

## ii.  *Plaintiff's Breach of Contract Claim*

Turning to the merits, Defendant initially argues that Northwell's breach of contract claim fails because:  (i) Plaintiff lacks contractual privity with Blue Cross SC; and (ii) Northwell has not exhausted its contractual remedies under the dispute resolution process mandated by its agreements with Empire.

The elements of a breach of contract claim in New York are:  "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach

of contract by the defendant, and (4) damages." *Martino v. MarineMax Northeast, LLC*, No. 17-cv-4708, 2018 WL 6199557, at *3 (E.D.N.Y. Nov. 28, 2018) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).   Breach of contract causes of action "require only a 'short and plain statement of the claim,' so long as the facts alleged and any reasonable inferences that can be drawn in [Plaintiff's] favor give rise to a plausible claim for relief." *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 64 (2d Cir. 2012) (citing Fed.R.Civ.P. 8(a)).   "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

While a non-signatory to a contract generally cannot be held liable for breach of that contract, a contract may bind a non-signatory under certain circumstances: (i) where the non-signatory manifests an intent to be bound by or assumes obligations under the contract, *see Pentacon BV v. Vanderhaegen*, No. 23-CV-2172, 2024 WL 1255992, at *22 (S.D.N.Y. Mar. 25, 2024) (internal citation omitted); (ii) "where the contract was signed by the party's agent[,]" *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 284 (S.D.N.Y. 2023) (internal citation omitted); or (iii) where there is the functional equivalent of privity between the signatories and the non-signatory.  *Gardner v. Sensio Inc.*, 645 F. Supp. 3d 310, 320 (S.D.N.Y. 2022).[2] Northwell argues that it has adequately pled all three theories.  *See* Pl. Opp. at 7-15.

---

[2] Northwell advances a fourth theory— that a non-signatory is bound by a contract that "anticipates the non-signatory's current and future involvement in the contract activity." *See* Pl. Opp. at 11 (citing *ESI, Inc. v. Coastal Corp.*, 61 F.Supp.2d 35, 73-74 (S.D.N.Y. 1999)).   This argument is based on a twenty-five year old case, which has not been cited for this principle since, and which explicitly reached

Here, the parties agree that Plaintiff is not a signatory to the Licensee Agreements, and Defendant is not a signatory to the Provider Agreement. *See* Am. Compl., ¶ 42; Def. Mem. at 13.  Thus, to establish that Blue Cross SC was nevertheless bound by the Provider Agreement, Northwell must allege that: (i) Blue Cross SC manifested an intent to be bound by or assumed obligations under the Provider Agreement*, see Pentacon BV*, 2024 WL 1255992, at *22; (ii) Empire was Defendant's agent with respect to that agreement, *see Kitchen Winners NY Inc.*, 668 F. Supp. 3d at 284; or (iii) Plaintiff and Defendant were in functional privity.  *See Gardner*, 645 F. Supp. 3d at 320.

> a) <u>Plaintiff has alleged that Defendant manifested an intent to be bound by the Provider Agreement by assuming obligations under it.</u>

Northwell claims that Defendant "manifest[ed] an intent to be bound by" the Provider Agreement "through its repeated acceptance of both the benefits . . . and the obligations . . . of the BlueCard terms," and was "actively involved in determining the amount due to Northwell under the terms of the [Provider Agreement]."  Pl. Opp. at 13.  Courts have determined that a non-signatory manifests its intent to be bound by a contract where that party "assumed the obligations of the contract."  *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019) (citation omitted).  Whether an entity manifests an intent to be bound by assuming contractual obligations "is based on the totality of [that entity's] expressed words and deeds."  *Id*.

---

its holding because a joint venture relationship existed between the non-signatory and a signatory to the agreement at issue.  Because no joint venture relationship is alleged, the Court declines to apply this precedent.

An allegation that a defendant assumed the obligations of a contract will survive a motion to dismiss where that defendant "played a considerable role in the management and performance of the [c]ontract" and "paid for [p]laintiff's services" as provided for in the contract, such that the defendant "assumed the role of a party to the [c]ontract . . . suggest[ing] that the parties were in privity." *Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. All., Inc.*, No. 05-CV-7776, 2007 WL 1701813, at *6 (S.D.N.Y. June 12, 2007); *see Mersen USA EP Corp. v. TDK Elecs. Inc.*, 594 F. Supp. 3d 570, 581 (S.D.N.Y. 2022) (micro-management of a contract's performance by a non-signatory points to that non-signatory's intent to be bound by the contract).

At this stage, drawing all inferences in Northwell's favor, Plaintiff has adequately pled that Blue Cross SC assumed obligations under the Provider Agreement, and thus manifested its intent to be bound thereunder.[3]  *See Jennings*, 367 F. Supp. 3d at 71.  The Provider Agreement states that Empire may notify Plaintiff "that claims for persons covered under certain national accounts administered by the various Blue Cross and Blue Shield Plans shall be presented to, and payment to Hospital expected from, a Blue Cross and/or Blue Shield Plan" like Blue Cross SC.  *See* Kadosh Decl., Ex. A, at XII.K.  The Amended Complaint alleges that Empire and Blue Cross SC follow this procedure when paying Northwell, *see* Am. Compl., ¶¶ 28-32, and that Empire notifies Plaintiff that Blue Cross SC has rendered

---

[3] The Court recognizes that another court in this District reached a different conclusion and dismissed Northwell's breach of contract claim in a case alleging similar facts and causes of action.  *See Northwell Health, Inc., v. Blue Cross & Blue Shield of Massachusetts, Inc.*, No. 2:23-CV-00977 (NJC)(AYS), 2024 WL 3637964, at *4 (E.D.N.Y. Aug. 2, 2024).  The Court respectfully declines to follow that court's holding.

a determination on Plaintiff's claim and provided payment. *See id.*, ¶ 32. According to Northwell, Defendant determines its claims and, pursuant to its contractual obligation to compensate Northwell, either directly pays, or instructs Empire to pay, Plaintiff at rates laid out in the Provider Agreement. Am. Compl., ¶¶ 31, 33-34, 51-52. In fact, according to the Amended Complaint, Empire cannot pay Northwell for services provided to Patients without Defendant's approval. *Id.*, ¶ 34. In this capacity, Blue Cross SC applies the claim determination standards set forth in the Provider Agreement. *Id.*, ¶¶ 30, 49. Thus, Northwell has sufficiently alleged that Defendant "played a considerable role in the management and performance" of the Provider Agreement by dictating Empire's performance thereunder, and "paid for [Northwell's] services" pursuant to that agreement. *Impulse Mktg. Grp., Inc.*, 2007 WL 1701813, at *6; *see Mersen USA EP Corp.*, 594 F. Supp. 3d at 581 (micro-management of a contract's performance by a non-signatory points to that non-signatory's intent to be bound by the contract.).

Nevertheless, Blue Cross SC argues that a certain term in the Provider Agreement precludes this conclusion. *See* Def. Mem. at 6. The 2000 Hospital HMO Agreement states that:

> Hospital [here, Northwell] further acknowledges that it has not entered into this Agreement based upon representations of any person other than Empire and that no person, entity or organization other than Empire shall be accountable or liable to Hospital for any of Empire's obligations to Hospital created under this Agreement. This paragraph shall not create any additional obligations whatsoever on the part of Empire other than those created hereinafter below.

Kadosh Decl., Ex. C, at II.A.   The 2000 Hospital PPO Agreement contains a substantially similar term.  *See* Kadosh Decl., Ex. A., at II.A; I.N (replacing the word "Empire" with the word "Insurers," defined as "Empire Blue Cross Blue Shield, Empire HealthChoice Assurance, Inc., and their Affiliates.").  Northwell, however, alleges that Defendant, as a "Payer" under the Provider Agreement, had its own obligations to Plaintiff.  *See* Am. Compl., ¶ 33.  Thus, this provision, which specifically addresses who may be held liable for ***Empire's*** obligations, does not preclude Plaintiff's claim at this stage.

This does not end the inquiry, however.  Blue Cross SC further argues that Northwell's breach of contract claim is precluded by a dispute resolution clause in the Provider Agreement.  *See* Def. Mem. at 16-17.  The Provider Agreement states that "[a]ny Hospital request for review of Insurer's claim or utilization review determinations shall be pursuant to the claim and utilization review appeal procedures . . . specifically incorporated herein by reference, and in accordance with applicable laws and regulations, and shall be subject to initial and final review pursuant to the Dispute Resolution Process."[4]  *See* Kadosh Decl., Ex. A, at VIII.E.  But the Provider Agreement also states that Northwell has the right to challenge any claim determination in a court of competent jurisdiction, notwithstanding the preceding language, and does not require Plaintiff to use the Dispute Resolution Process prior to bringing suit.  *See id.*; Kadosh Decl., Ex. C., at VIII.F.  Accordingly,

---

[4] This language is quoted from the 2000 Hospital PPO Agreement.  The 2000 Hospital HMO Agreement contains identical language, except that "Insurer's" is replaced by "Empire's."  *See* Kadosh Decl., Ex. C., at VIII.F.

the Court cannot conclude that this clause bars Northwell's otherwise tenable claim. For the reasons set forth above, dismissal of Plaintiff's breach of contract cause of action is inappropriate prior to further discovery, and the Court recommends denying Defendant's Motion as to this claim.

> ### b) Plaintiff has not alleged that Empire was Defendant's agent with respect to the Provider Agreement.

Turning to Plaintiff's second argument, an agent's authority to bind its principal to a contract is either actual or apparent. *Highland Cap. Mgmt. LP*, 607 F.3d at 327. "Under New York law, an agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf." *Id.* "Apparent authority exists when a principal, either intentionally or by lack of ordinary care, induces a third party to believe that an individual has been authorized to act on its behalf." *Id.* (citation omitted). Under this form of agency, a principal must communicate "words or conduct" to that third party "that give rise to the appearance and belief that the agent possesses authority to enter into a [contract]." *Id.* (citing *Wells Fargo Home Mortgage, Inc. v. Hiddekel Church of God, Inc.*, 1 Misc.3d 913, 781 N.Y.S.2d 628 (Kings Cty. Sup. Ct. 2004)). "However, '[t]he mere creation of an agency for some purpose does not automatically invest the agent with "apparent authority" to bind the principal without limitation.'" *Id.* at 328 (quoting *Ford v. Unity Hosp.*, 32 N.Y.2d 464, 472, 346 N.Y.S.2d 238, 244 (1973)).

Plaintiff has not adequately alleged that Empire had actual or apparent authority to bind Defendant to the Provider Agreement. Initially, Northwell does not allege that Blue Cross "granted [Empire] the power to enter into contracts on [its]

18

behalf." *Themis Cap., LLC*, 881 F. Supp. 2d at 520.  As to apparent authority, the Amended Complaint alleges no "words or conduct" communicated by Defendant to Northwell that "[gave] rise to the appearance and belief" by Plaintiff that Blue Cross SC authorized Empire to enter into the Provider Agreement on Defendant's behalf. Accordingly, Northwell has not alleged that Empire bound Blue Cross SC to the Provider Agreement as its agent.  *Highland Cap. Mgmt. LP*, 607 F.3d at 327.  In its opposition to Defendant's Motion, Plaintiff argues that Empire "provides . . . assistance in Defendant's claim determination process, on behalf of, and as agent for, Defendant." *See* Pl. Opp. at 3, 5, 8.  But agency for one purpose does not automatically empower that agent to bind its principal in contract without limitation.  *Highland Cap. Mgmt. LP*, 607 F.3d at 327.  Accordingly, Plaintiff's argument is unavailing, and the Amended Complaint does not allege that Empire was Defendant's agent with respect to the Provider Agreement.

c)  <u>Northwell has not alleged that it was in "functional privity" with Blue Cross SC.</u>

Northwell's functional privity argument similarly fails.  New York law recognizes that a party may be liable for breach of contract under a theory of functional privity where a plaintiff alleges that party was the agent or subcontractor of a contracting entity in privity with the plaintiff.  *See E.C. Contracting, Inc. v. D.F. Pray, Inc.*, No. 19-CV-6813, 2022 WL 877809, at *5 (E.D.N.Y. Jan. 12, 2022), *report and recommendation adopted*, 2022 WL 875210 (E.D.N.Y. Mar. 24, 2022); *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 451 (E.D.N.Y. 2013) (citation omitted); *Crown Cork & Seal USA, Inc. v. Blue Rock Constr., Inc.*, No. 3:20-CV-126,

2022 WL 267354, at *2 (N.D.N.Y. Jan. 28, 2022); *Minner v. Navient Corp.*, No. 18-CV-1086S, 2020 WL 906628, at *13 (W.D.N.Y. Feb. 25, 2020).  To sustain this claim, Plaintiff must allege that Defendant was Empire's agent.  *See Kapsis*, 923 F. Supp. 2d at 451 (a defendant "cannot be liable for breach of contract [under a functional privity theory] absent such an allegation or an allegation that it was acting as the agent for someone who was in privity.") (citation omitted); *In re Cavalry Const., Inc.*, 428 B.R. 25, 31 (S.D.N.Y. 2010), *aff'd sub nom. In re Cavalry Const.*, 425 F. App'x 70 (2d Cir. 2011) ("The essential element of this doctrine is that the middle party works as the agent for the principal with the knowledge of all parties.").  Northwell has not alleged that Blue Cross SC was Empire's agent, and therefore cannot hold Defendant liable for breach of the Provider Agreement under this theory.

### iii.   Plaintiff's Breach of Third-Party Beneficiary Contract Claim

Next, Defendant argues that Northwell has not plausibly alleged that Plaintiff is a third-party beneficiary under the Member License Agreement or Controlled Affiliate Licensee Agreement.  *See* Def. Mem. at 8, 17-19.  "Under New York law, only parties to, or intended third-party beneficiaries of, a contract have standing to enforce it."  *WiAV Sols. Inc. v. HTC Corp.*, No. 18-CV-2595, 2020 WL 2216657, at *7 (S.D.N.Y. May 7, 2020) (citation omitted).  "[T]o recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party."  *Id.* (citing *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005)).  "Doing so requires the third party to show that a binding contract exists between other parties; that this contract was intended

for [its] benefit; and that the benefit to [it] was direct rather than incidental." *Id.* (citation omitted).  A beneficiary is an intended beneficiary where "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties" and "the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary." *Subaru Distributors Corp.*, 425 F.3d at 124 (citing Restatement (2d) of Contracts § 302(1)).  "Under New York law, dismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant . . . or where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant." *Subaru Distributors Corp.*, 425 F.3d at 124.

Here, the Licensee Agreements are not before the Court.  Northwell, however, alleges that these agreements required Empire and Blue Cross SC to "provide the financial resources needed to pay for the healthcare that any [p]atient they insured received from a provider who was in-network with another Member Company." *Id.*, ¶ 41.  This allegation is sufficient to state a claim that BCBSA and Defendant, the parties to the Licensee Agreements, obligated one another to compensate providers, like Northwell, for their services to each Member Company's insured patients.[5] *See Subaru Distributors Corp.*, 425 F.3d at 124.  Without access to the Licensee Agreements, the Court cannot say at this stage that these contracts "rule[ ] out any intent to benefit" Northwell.  *Id.*; *see Bild v. Konig*, No. 09-CV-5576, 2011 WL

---

[5] In reaching this conclusion, the Court again disagrees with that reached in *Blue Cross & Blue Shield of Massachusetts, Inc.*, 2024 WL 3637964, at \*12.

1563576, at *2 (E.D.N.Y. Apr. 25, 2011) (denying a motion to dismiss a third-party beneficiary claim where the complete contract was not before the court).  Accordingly, the Court recommends denying Defendant's Motion as to this cause of action.

### iv.  Plaintiff's Quasi-Contract Claims

Finally, Blue Cross SC argues that Plaintiff's quasi-contract claims under theories of *quantum meruit* and unjust enrichment fail because the 2000 Hospital PPO Agreement, the 2000 Hospital HMO Agreement, the 2008 Participating Practitioner Group Agreement, and their amendments govern this dispute.  Def. Mem. at 19-20.   Neither party distinguishes between these two quasi-contract theories.  "Although their elements are articulated somewhat differently, New York law permits analyzing *quantum meruit* and unjust enrichment together as a single quasi[-]contract claim." *Nwoye v. Obama*, No. 22-CV-1791, 2023 WL 4631712, at *11 (S.D.N.Y. July 20, 2023), *report and recommendation adopted*, 2023 WL 5164156 (S.D.N.Y. Aug. 11, 2023), *aff'd*, No. 23-1178-CV, 2024 WL 911753 (2d Cir. Mar. 4, 2024); *see Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi[-]contract for events arising out of the same subject matter . . . .  [A] quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (citing

*Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388–89, 521 N.Y.S.2d 653 (1987)).

This principle applies even if one of the parties to the claim is not a party to that contract. *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) (citation omitted); *see Terry v. Charitable Donor Advised Fund, L.P.*, No. 21-CV-11059, 2024 WL 898907, at *19 (S.D.N.Y. Mar. 1, 2024) (holding that the existence of a valid contract to which plaintiff was not a party nevertheless barred a quasi-contract claim covering the same subject matter—namely, whether certain obligations set forth in a valid contract had been breached).  Consistent with this principle, courts in this Circuit applying New York law have repeatedly concluded that the existence of a valid agreement "governing the subject matter of the plaintiff's claim also bars any quasi-contractual claims against. . . a third party nonsignatory," like Blue Cross SC.  *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 166 (E.D.N.Y. 2012) (citing *Bellino Schwartz Padob Adver. v. Solaris Mktg. Grp.*, 222 A.D.2d 313, 635 N.Y.S.2d 587, 588 (1st Dep't 1995)); *see Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 202 (S.D.N.Y. 2011) (collecting cases) (dismissing an unjust enrichment claim against a non-signatory defendant who was allegedly enriched as a result of a signatory's non-compliance with a valid contract).

Here, Plaintiff's quasi-contract claims are based on its allegations that Northwell was not adequately compensated for medical services it provided to Patients, either because Defendant rejected the claim altogether or paid Plaintiff at

23

the incorrect rate. *See* Am. Compl., ¶ 71. The Provider Agreement sets forth both the rate Northwell is to be compensated for services it provided to Patients and the method for determining Plaintiff's claims. *See id.*, ¶ 46. Northwell alleges that the Provider Agreement "requires Northwell accept as patients, and provide health care services to" Patients insured by Blue Cross SC. *See id.*, ¶ 21. Accordingly, the Provider Agreement—which Northwell alleges is a valid contract, *see id.*, ¶ 18— covers the same subject matter as Plaintiff's quasi-contract claims, and therefore bars this cause of action.

The Court notes that Northwell attempts to avoid this outcome by briefly alleging that Northwell provided care to Patients on an out-of-network basis. *See id.*, ¶¶ 64, 68. But the Court is not required to accept as true conclusory statements, *see Ashcroft v. Iqbal*, 556 U.S. at 664, 129 S. Ct. at 1941, or facts that are directly contradicted by other facts stated in the Amended Complaint. *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 424 (S.D.N.Y. 2010); *see Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (a court will not accept facts as true where those facts are contradicted by "more specific allegations."). The Amended Complaint states that Northwell was an in-network provider with respect to Empire and that Empire was part of a national network with Defendant. *See* Am. Compl., ¶¶ 19, 21. Accordingly, the Court does not accept as true Plaintiff's statement that it provided care to Patients on an out-of-network basis. For these reasons, the Court recommends granting Defendant's Motion with respect to Northwell's unjust enrichment and *quantum meruit* claims.

**B. The Parties' Motion to Seal**

For the reasons set forth herein, the Court grants the parties' Motion to Seal. The parties jointly move to seal unredacted versions of the following: (i) Defendant's Memorandum; (ii) the Kadosh Declaration; (iii) Plaintiff's Opposition; (iv) the McBride Declaration; (v) Defendant's Reply; and (vi) the Kadosh Reply Declaration.

The Second Circuit has established a three-part analysis for determining whether documents relating to a lawsuit should be sealed. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006); *King Pharm., Inc. v. Eon Labs, Inc.*, No. 04-CV-5540, 2010 WL 3924689, at *4 (E.D.N.Y. Sept. 28, 2010). Courts must first determine whether the documents are judicial documents, "to which the public has a presumptive right of access." *King Pharm., Inc.*, 2010 WL 3924689, at *4 (citation omitted). Documents filed in support of a motion to dismiss are considered judicial documents. *P&L Dev., LLC v. Gerber Prod. Co.*, No. 21-CV-5382, 2022 WL 1441999, at *3 (E.D.N.Y. May 6, 2022) (citing *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, No. 14-CV-6867, 2016 WL 1071107, at *5 (S.D.N.Y. Mar. 18, 2016), *aff'd*, 814 F.3d 132 (2d Cir. 2016)). If the documents are judicial documents, courts must next determine the weight of the public's presumptive right of access. *King Pharm., Inc.*, 2010 WL 3924689, at *4 (citation omitted). Finally, courts must balance competing considerations against the presumptive right to access, including "the danger of impairing judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (citation omitted). In so doing, courts must be cognizant that "the presumption of public access to court documents has the potential to exacerbate . . .

25

harms to privacy and reputation by ensuring that damaging material irrevocably enters the public record." *See Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019). "Examples of commonly sealed documents include those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like." *Kewazinga Corp. v. Microsoft Corp.*, No. 18-CV-4500, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (citation omitted).

Under the three-part analysis courts use in this Circuit, *see Lugosch*, 435 F.3d at 119-20, these documents are judicial documents because they comprise the parties' briefing on Defendant's motion to dismiss, *see P&L Dev., LLC*, 2022 WL 1441999, at *3, and so are afforded a strong presumption of public access. *See Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 167 (S.D.N.Y. 2018) ("When this Court issues its Opinion on [the pending motion to dismiss], the public deserves to see what judicial document it relied on.").

Finally, the Court must balance competing considerations against the presumptive right to access. *King Pharm., Inc.*, 2010 WL 3924689, at *4 (citation omitted). "[T]he protection of sensitive, confidential, or proprietary business information is a countervailing interest that can militate in favor of sealing." *TileBar v. Glazzio Tiles*, No. 22-CV-3823, 2024 WL 1186567, at *26 (E.D.N.Y. Mar. 15, 2024).

The parties argue that the unredacted versions of the briefing on Defendant's Motion should be filed under seal because they "contain confidential and proprietary business information, that, if accessed by Plaintiff's competitors, would allow the competitors to gain an improper and unfair competitive advantage." Mot. to Seal  at

1.  The Court has compared the redacted versions of the briefing, filed publicly on the docket at DEs [30]-[33], to the unredacted briefing, and concludes that the redactions are restricted to "sensitive, confidential, or proprietary business information." *TileBar*, 2024 WL 1186567, at \*26.    Accordingly, the Court grants the parties' joint Motion to Seal the unredacted versions of these documents.

## IV.    CONCLUSION

For the reasons set forth above, the Court grants the parties' Motion to Seal and respectfully recommends granting Defendant's Motion as to Plaintiff's quasi-contract claims and denying it as to Northwell's breach of contract and third-party beneficiary contract cause of actions.

## V.    OBJECTIONS

A copy of this Report and Recommendation and Memorandum and Order is being sent to counsel for all parties by electronic filing on the date below.    Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days.    *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).    Failure to file objections within this period waives the right to appeal the District Court's Order.    *See Ferrer v. Woliver*, 2008 WL 4951035, at \*2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central Islip, New York
            August 13, 2024

                              s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge